27 C.C.P.A. (Patents)

## In re BORCHERS et al.
### Patent Appeal No. 4253.

Court of Customs and Patent Appeals.
March 4, 1940.

Charles M. Thomas, of Washington, D. C. (Clarence O. McKay, of Washington, D. C., of counsel), for appellants.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability in view of prior art cited of thirteen claims, numbered 10, 11, 13, 14, 27, 28, 31, 32, 33, 34, 36, 37 and 38, in an application for patent relating to a manifolding device. Three claims stand allowed.

The brief on behalf of appellants follows the board in citing claim 36 as generally representative of the subject matter of the appeal. It reads: "36. In a manifolding device, a platen over which a plurality of paper strips having physical alterations at form-length intervals are adapted to be fed; advancing means for advancing the strips form-length amounts at each operation thereof including strip-engaging means which, upon engagement with the physical alterations of the strips, causes the advancement of each strip severally to be interrupted and the strips to be brought to registration with each other; starter means operative during continuing operation of the advancing means for advancing all of the strips simultaneously to carry the physical alterations in the strip beyond the strip-engaging means so that the latter may reengage the strips and advance them in predetermined extent; and means for retaining the advancing means inoperative after the strips have been advanced said predetermined extent at which time the starter means is out of contact with the strips."

The references cited are as follows: Konerman et al., 1,326,406, Dec. 30, 1919; Hagemann, 1,693,982, Dec. 4, 1928; Hagemann, 1,735,858, Nov. 19, 1929; McKee et al., 1,932,980, Oct. 31, 1933.

In an analysis of claim 36 the brief for appellants divides it into four features and states that features 3 and 4 are the important ones on the question of patentability of that claim over the cited prior art. Omitting the parenthetical expressions used in the brief and following the italics there used, those features read:

"3. 'starter means * * * operative during continuing operation of the advancing means * * * for advancing all of the strips simultaneously to carry the physical alterations in the strip * * * beyond the strip-engaging means * * * so that the latter may reengage the strips and advance them in predetermined extent' * * *;

"4. 'and means * * * for retaining the advancing means * * * inoperative after the strips have been advanced said predetermined extent * * * at which time the starter means * * * is out of contact with the strips' * * *."

It appears that the respective patents to McKee et al., Konerman et al., and Hagemann's patent No. 1,735,858 were cited as anticipations of features concerning which there is no issue before us. So, Hagemann patent No. 1,693,982 is the only one requiring our consideration. It is the only one to which the board specifically referred.

Appellants' brief gives the following general description of their device: "The manifolding machine of appellants' claimed invention is intended for use with a plurality of superimposed continuous paper webs or strips marked throughout their length by perforated or otherwise weakened division lines into business forms for the making of notations therein. The machine is designed for operation on each full turn of a manually operable driving shaft to feed the paper strips one form-length advance into writing position over a platen, with a temporary interruption to the feed shortly before the writing position has been attained for alignment or registration of the forms with one another so as to enable the writing of desired notations in the form on the top strip and the duplication of the written matter through the usual interposed carbons upon the aligned or registered form in each of the under strips. The machine is also so designed that at the next full turn of the driving shaft the previously advanced and inscribed set of forms are further advanced to dispose the division line between them and the follower set of forms at a tear off bar on the machine for tearing off all but the lowermost inscribed form, the latter remaining intact in the lowermost strip for record purposes, and the follower forms then remain on the platen of the machine in proper registered position for inscription therein as before."

The foregoing is followed by a very elaborate detailed statement relative to appellants' structure and its operation. Taken as a whole, the mechanism is quite complicated. The complete system is illustrated by drawings comprising sixteen figures with a large number of numerals to designate its specific structural elements. A

though full consideration of the case has required our study of the details it is not deemed essential to recite all of them here.

The manifolding device itself is illustrated in two figures of the drawings with numerals to indicate the several physical features defined in claim 36, supra, and the mode of·operation is described in the .specification. We quote from the statement of the examiner the following: "The manifolding device is illustrated in Figs. 7 and 8. The same is shown as including a casing 26 having a storage compartment 27 for a stack of folded form strips. A feed roller 41 and a pair of feed disks 40 constitute the main feeding means for advancing the forms over the writing platen 31. The feeding means is operated by crankarm 47. In operating the feeding means, when the physical alterations of the strips, such as notches 23, enter the bite of the feeding means, feed advancement is arrested. To restart the feeding of the strips, the shaft 45 carries in addition to disk 40, the auxiliary feeding means in the form of a shoe 49 adapted to engage the strips and feed the strips when the notches 23 are in the bite of feed roller 41 and feed disks 40."

In applying the Hagemann patent (1,693,-982) the examiner described it, so far as here material, as follows: "Attention is directed to Fig. 1 of the patent, wherein the crank 13 is shown in its position at the end of its working stroke, and at which time the auxiliary feeding shoes 40 are shown to the right of the bite of feeding roll 15 and disks 14. It is obvious that release of the crank from this position, followed by one revolution of the crank, will feed the strips forward until interrupted by apertures 17 of the strips for aligning the strips, and then feed the strips forward a predetermined extent by means of the auxiliary feeding shoes 40, before the crank arrives at the end of its stroke as shown in Fig. 1.".

Relative to the limitation in claim 36 describing the *"starter means"* mentioned in feature 3 (defined by both the examiner and appellants as being the auxiliary feeding means in the form of a shoe) as being "out of contact with the strips" after "the strips have been advanced said predetermined extent," the examiner held that this feature did not patentably distinguish from Hagemann, saying: "In the Hagemann patent (1,693,982), once the auxiliary

feeding shoes 40 assist in the further feeding of the strips, the aligning apertures 17 will be moved past the bite of the feeding disks 14, so that the feeding disks will again grip the strips. Therefore, whether the shoes 40 are still gripping the strips or not, is not critical."

With respect to claim 38, the examiner's statement reads: "In connection with claim 38, in which the machine is defined as ,operating on strips having marginal notches, the Hagemann device is adapted for use with such strips by proper adjustment of the disks 14 along the shaft 12 and therefore meets the claimed machine. Also the apertures in the strips of Hagemann arranged within the margins of the strips perform the same function in substantially the same manner and are regarded as equivalent. The machine structure is not changed because thereof. The use of strips having the cut outs in a different location results merely in the necessity of an adjustment of the disks 14 angularly and/or axially on shaft 12. The structure of the device is not changed."

The decision of the board is quite brief. It is evident from it that the issues before it were limited to those which have been brought before us. The decision describes the application as relating "to a modification of prior art apparatus such as shown in Hagemann No. 1,693,982," and says:

"We believe that, in view of the statement on page 4 of Hagemann, commencing in line 19, the only substantial difference, except as to claim 38, is the inclusion of a means for rendering the advancing means inoperative at the period in the operation described in the portion of the specification of Hagemann, above referred to. We think, however, that the stop 27 is the substantial equivalent of such a means. It appears to be true that in appellants' disclosure the additional movement is slightly farther than in the reference where the starter plates 40 are still in engagement with the strips, but we do not see anything patentable in moving the feed slightly farther. We are of the view that the claims under consideration do not define an inventive modification of the apparatus of this reference.

"In regard to claim 38, we agree with the examiner that the employment of marginal notches and the movement of the rollers to enter these notches is also an obvious modification."

The language in the Hagemann patent specification to which the board so alluded reads: "By then turning the handle 13 the webs may be fed and the lower web taken up on the spool 57 until the next set of aligning apertures comes between the feed rolls, permitting the webs to align, and so that a slight further feed operation will cause the plates 40 to advance the webs slightly and hold them. The handle 13 will then be in contact with the stop 27 and retrograde rotation of the lower feed rolls prevented by the pawl 55. The webs will then be held in alignment ready for inscription and for the tearing off of the advance ends of the two upper webs on the tearing bar 44."

Before us appellants urge, with respect to claim 36, that the examiner was in error on the nature of the difference between their machine and that of Hagemann "because he was in error on the facts as to the disclosure of the Hagemann patent." The argument upon this is, in substance, that the patent does not disclose an operation in which the leading pair of apertures in the paper strips are advanced by the auxiliary shoes past the bites of the main feeding discs so as to dispose the latter again in pressure engagement with the strips and thereby cause the finally advanced set of forms to be held in registered writing position on the platen by both those discs and the auxiliary shoes.

It is also urged that the board was in error in its holding, based upon the language above quoted from the Hagemann specification. Appellants assert, in substance that nothing is said in the Hagemann patent as to the main feeding discs engaging the strips at any time after those discs have entered the leading pair of cut-outs, for registration of the forms, to cause or even to assist in the final further advance of the registered forms to their writing position, and argues, therefore, that it must be concluded that the final advance of Hagemann's registered forms to their writing position is so very slight as not to bring the pair of cut-outs therein sufficiently forward of the bites of the discs to again dispose the latter in effective pressure engagement with the strips.

There are other and elaborate arguments made in the brief, and counsel for appellants made an extensive oral argument before us with demonstrations of their device. All these have been duly considered.

We do not understand appellants to contend that either the examiner or the board erred in their description of the *physical* elements in the Hagemann patent (1,693,-982). In the final analysis the contention relates rather to alleged differences in the mode of operation and the results obtained.

It is noted that the tribunals of the Patent Office in their descriptions of the operation of the respective devices seem not to have found any striking differences so far as the appealed claims are concerned. That there may be some differences may be conceded, but these, of themselves, do not, in our opinion, lend patentability to the structure.

We have given the quite technical matters here involved, as they relate to structure, careful study in the light of appellants' arguments with the result that we are not convinced that the findings below are erroneous.

The decision of the board, therefore, is affirmed.

Affirmed.